IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

FILED IN
OPEN COURT

FEB 0 5 2010

BY: _____

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | |
| -vs- | ) | No.  CR-09-241- __ F |
| JERRY DALE CASH, | ) | |
| Defendant. | ) | |

## PLEA AGREEMENT

### Introduction

1.     This document contains the entire plea agreement between defendant, **JERRY DALE CASH**, and the United States through its undersigned attorneys. No other agreement or promise exists, nor may any additional agreement be entered into unless in writing and signed by all parties. Any unilateral modification of this agreement is hereby rejected by the United States. This agreement applies only to the criminal violations described and does not apply to any civil matter or any civil forfeiture proceeding except as specifically set forth. This agreement binds only the United States Attorney's Office for the Western District of Oklahoma and does not bind any other federal, state, or local prosecuting, administrative or regulatory authority. If defendant does not accept the terms of this agreement and return it signed to the United States Attorney's office by Friday, July 31, 2009, at 4:00 p.m., the offer is withdrawn.

## Guilty Plea

2.      Defendant agrees to enter a plea of guilty to a one-count Information charging him with knowingly and willfully certifying a false periodic financial report in violation of 18 U.S.C. § 1350.  To be found guilty of violating that provision, defendant must admit that:

(1)     he was chief executive officer of Quest Resources Corporation and its affiliated company Quest Energy Partners, L.P. (collectively "Quest");

(2)     he knowingly and willfully certified a statement required by 18 U.S.C. § 1350; and

(3)     he did so knowing that the periodic report accompanying the statement did not fully comply with the requirements of section 13(a) of the Securities Exchange Act of 1934 and/or that the information contained in that quarterly financial report did not fairly present, in all material respects, the financial condition and results of Quest's operations and with specific intent to violate the law.

## Maximum Penalty, Restitution, and Special Assessments

3.      The maximum penalty that could be imposed as a result of this plea is twenty years' imprisonment or a fine of $5,000,000.00, or both such fine and imprisonment, as well as a mandatory special assessment of $100.00, and a term of supervised release of three years.

4.      Pursuant to 18 U.S.C. §§ 3663(a)(3) and 3663A, the parties agree that, as part of the sentence resulting from the defendant's plea, the sentencing Court will enter an order of restitution, to the extent allowed by the Mandatory Victim's Restitution

2

Act, 18 U.S.C. § 3663A, to Quest Resources Corporation and/or any and all affiliated or

successor entities for any loss or harm related to defendant's unauthorized transfer of $10

million and attempts to cover up those transfers. Moreover, pursuant to 18 U.S.C. §

3663A(c)(3)(B), the parties agree that calculating the loss suffered by Quest shareholders

would require the determination of complex issues of fact that would complicate and

prolong the sentencing process to such a degree that the need to provide restitution to

those shareholders is outweighed by the burden on the sentencing process. The United

States agrees not seek civil forfeiture.

      5.     Defendant agrees to pay the special assessment due the United States

to the Office of the United States Court Clerk immediately following sentencing.

Defendant understands that any fine or restitution ordered by the sentencing Court is

immediately due unless the sentencing Court provides for payment on a date certain or in

installments.

      6.     For certain statutory offenses, the sentencing Court must also impose

a term of supervised release, which defendant will begin to serve after being released

from custody. For all other offenses, the sentencing Court may impose a term of super-

vised release to be served following release from custody. During the term of supervised

release, defendant will be subject to conditions that will include prohibitions against

violating local, state or federal law, reporting requirements, restrictions on travel and

residence, and possible testing for controlled substance use. If defendant violates the

3

conditions of his supervised release, the Court may revoke his supervised release, and sentence him to an additional term of imprisonment. This additional term of imprisonment would be served without credit for the time defendant successfully spent on supervised release. When combined, the original term of imprisonment and any subsequent term of imprisonment the Court imposes may exceed the statutory maximum prison term allowable for the offense.

### Sentencing

7.     The parties acknowledge that 18 U.S.C. § 3553(a) directs the sentencing Court to consider certain factors in imposing sentence, including the Sentencing Guidelines promulgated by the United States Sentencing Commission. Consequently, although the parties recognize that the Sentencing Guidelines are only advisory, they have entered into certain stipulations and agreements with respect to the Guidelines. Based on the information that is known to the parties on the date this agreement is executed, they expect to take, but are not limited to, the following positions at sentencing:

The defendant should receive a 2-level downward adjustment for acceptance of responsibility pursuant to§ 3E1.1(a) of the Sentencing Guidelines, if he commits no further crimes and fully complies with all of the other terms of this agreement. Further, to the extent the sentencing Court finds defendant qualifies for that 2-level downward adjustment and § 3E1.1(b) is applicable, the United States agrees to move for

4

the additional 1-level downward adjustment of § 3E1.1(b), if defendant accepts the terms of this plea agreement by the deadline established in Paragraph 1.

The United States agrees not to ask the sentencing Court, either orally or in writing, to impose a sentence of more than ten years. This does not mean that the United States believes that a sentence of more than ten years would be inappropriate or unwarranted under law.

Even if doing so could lead the sentencing Court to impose a sentence of more than ten years, the parties agree that the United States retains the right and ability to:

    (1)    present evidence to the Probation Office and the sentencing Court in support of any and all Guideline enhancements, including, but are not limited to, the following:

        (a)    arguing that the loss in this case is between $50,000,000 and $200,000,000 pursuant to § 2B1.1(b)(1) of the Sentencing Guidelines;

        (b)    arguing that there are more than 250 victims of the defendant's offense pursuant to § 2B1.1(b)(2)(C) of the Sentencing Guidelines;

        (c)    arguing that the offense involved sophisticated means pursuant to § 2B1.1(b)(9) of the Sentencing Guidelines;

        (d)    arguing that the defendant's offense substantially endangered the solvency or financial security of an organization that was a publicly traded company pursuant to § 2B1.1(b)(14)(B)(ii)(I) of the Sentencing Guidelines;

        (e)    arguing that the defendant's offense involved a violation of securities law and, at the time of the offense, the defendant was an officer or a director of a publicly traded company pursuant to § 2B1.1(b)(15)(A) of the Sentencing Guidelines;

(f)   arguing that the defendant was an organizer, leader, manager, or supervisor of criminal activity pursuant to § 3B1.1 of the Sentencing Guidelines; and

(g)   arguing that the defendant abused a position of public or private trust in a manner that significantly facilitated the commission and concealment of the offense pursuant to§ 3B1.3 of the Sentencing Guidelines;

(2)   present the Probation Office and sentencing Court with all information relevant to the defendant's criminal history score;

(3)   provide any and all evidence and make any and all arguments to the Probation Office and sentencing Court relating to the factors outlined in 18 U.S.C. § 3553(a); and

(4)   present any and all evidence and make any and all arguments to the Probation Office and sentencing Court that it deems appropriate, even if not strictly tied to a Guideline provision or one of the § 3553(a) factors.

Nothing in this plea agreement limits in any way any victims' rights, including the victims' right to ask the sentencing Court to impose any sentence. Furthermore, nothing in this plea agreement limits the United States' ability and/or obligations to confer with and advise potential victims of their rights under federal law, including their rights to be heard at the defendant's sentencing and to advise the sentencing Court of their wishes with respect to the defendant's sentence. Moreover, nothing in this plea agreement limits the United States' ability to work with victims to present evidence to the Court related to any factor under the Sentencing Guidelines or 18 U.S.C. § 3553(a). The United States will not request that any victim ask the sentencing Court to impose any specific term of imprisonment.

6

Apart from any expressed agreements and stipulations, the parties reserve the right to advocate for, and present evidence relevant to, other Guideline adjustments and sentencing factors for consideration by the U.S. Probation Office and the Sentencing Court.

The parties have entered into this plea agreement under the provisions of Rule 11(c)(1)(A) and (B). Defendant also acknowledges and understands that the sentencing Court is not bound by, nor obligated to accept, these stipulations, agreements, or recommendations of the United States or defendant. And, even if the sentencing Court rejects one or more of these stipulations, agreements, or recommendations, that fact alone would not allow defendant to withdraw his plea of guilty. It is the expectation of the United States that its criminal investigation of defendant's conduct (as opposed to the wrongdoing of others) will cease upon the signing of this plea agreement. However, subject to the terms and conditions of this plea agreement (particularly the conditions concerning § 1B1.8 set out in paragraph 11), the United States expressly reserves the right to take positions that deviate from the foregoing stipulations, agreements, or recommen-dations in the event that material credible evidence requiring such a deviation is discov-ered during the course of the United States' investigation subsequent to the signing of this agreement or arises from sources independent of the United States, including the U.S. Probation Office, provided that the United States will not ask the sentencing Court to impose a sentence of more than ten years as agreed above.

7

## Waiver of Right to Appeal and Bring Collateral Challenge

8.     Defendant understands that the sentencing Court will consider those

factors in 18 U.S.C. § 3553(a) in determining his sentence. Defendant also understands

that the sentencing Court has jurisdiction and authority to impose any sentence within the

statutory maximum for the offense to which he is pleading guilty. Defendant further

understands that 28 U.S.C. § 1291 and 18 U.S.C. § 3742 give him the right to appeal the

judgment and sentence imposed by the sentencing Court. Acknowledging all this,

defendant, in exchange for the promises and concessions made by the United States in

this plea agreement, knowingly and voluntarily waives his right to:

a.     Appeal or collaterally challenge his guilty plea, sentence, and

restitution imposed, and any other aspect of his conviction, including but not limited to

any rulings on pretrial suppression motions or any other pretrial dispositions of motions

and issues;

b.     Appeal, collaterally challenge, or move to modify under 18

U.S.C. § 3582(c)(2) or some other ground, his sentence as imposed by the Court and the

manner in which the sentence is determined, provided the sentence is within or below the

advisory guideline range determined by the Court to apply to this case. Defendant

acknowledges that this waiver remains in full effect and is enforceable, even if the Court

rejects one or more of the positions of the United States or defendant set forth in para-

graph 7;

8

c.     It is provided that defendant specifically does not waive the right to appeal a sentence above the advisory sentencing guideline range determined by the Court to apply to this case.

9.     The United States agrees to waive its right under 18 U.S.C. § 3742 to appeal the sentence imposed by the Court and the manner in which the sentence was determined, provided defendant's sentence is within the advisory guideline range determined by the Court to apply to this case. By this agreement, the United States specifically does not waive its right to appeal a sentence below the advisory sentencing guideline range determined by the Court to apply to this case.

### Waiver of Claim to Prevailing Party Status

10.    Defendant expressly acknowledges that he is not a "prevailing party" within the meaning of 18 U.S.C. § 3006A with respect to the count of conviction or any other count or charge that may be dismissed pursuant to this agreement. If defendant is represented by retained counsel, he voluntarily, knowingly, and intelligently waives any rights he may have to seek reasonable attorney's fees and other litigation expenses under 18 U.S.C. § 3006A.

### Obligations of Defendant

11.    Defendant agrees to cooperate fully with the United States by providing truthful, candid, and complete information as to all matters within his knowledge concerning his wrongful conduct as well as any wrongful conduct involving others.

9

Pursuant to § 1B1.8 of the Sentencing Guidelines, when such information is first provided to the United States by defendant (instead of initially provided by any accomplices of defendant or other independent sources), it will not be used against defendant in determining the advisory Sentencing Guideline range. Defendant understands that such cooperation will include (a) attending all meetings at which the United States requests his presence; (b) providing to the United States, upon request, any document, record, or other tangible evidence relating to matters about which the United States or any designated law enforcement agency inquires; (c) testifying truthfully before the grand jury and at any trial or other court proceedings if requested to do so by the United States; (d) bringing to the attention of the United States all crimes which he has committed, and all administrative, civil or criminal proceedings, investigations, or prosecutions in which he has been or is a subject, target, party, or witness. Defendant shall commit no further crimes.

12.    It is understood by the parties that no statements made by defendant subsequent to and in response to this agreement will be used directly against him in any subsequent criminal proceeding, except in a prosecution for perjury or a false-statement offense. This restriction does not affect the rights and obligations of the United States, as stated herein, concerning the prosecution of the instant charged offense. Moreover, the parties also recognize that the United States specifically reserves the right to (a) use any statements made by defendant to impeach him if he ever testifies in an inconsistent or

10

contrary manner during any trial or other proceeding; and (b) to pursue and investigate any leads which may arise from statements made by defendant.

13.    It is understood that, should defendant commit any further crimes or should it be determined that he has knowingly given false, incomplete, or misleading testimony or information, or should he otherwise violate any provision of this agreement, the United States may declare this agreement null and void and prosecute defendant for any and all his federal criminal violations, including perjury and obstruction of justice. Any such prosecution that is not time-barred by the applicable statute of limitations on the date of the signing of this agreement may be brought against defendant, notwithstanding the expiration of the statute of limitations between the signing of this agreement and the commencement of such prosecution. Defendant hereby waives all defenses based on the statute of limitations with respect to any prosecution that is not time-barred on the date that this agreement is signed.

14.    The parties also recognize that in the event it is determined that defendant has committed any further crimes, knowingly given false, incomplete, or misleading testimony or information, or otherwise violated any provision of this agree-ment, (a) all statements made by defendant to the United States or other designated law enforcement agents, and any testimony given by defendant before a grand jury or other tribunal, whether prior to or subsequent to the signing of this agreement, and any leads from such statements or testimony, shall be admissible in evidence in any criminal

11

proceeding brought against defendant; and (b) defendant shall assert no claim under the United States Constitution, any statute, Rule 11(f) of the Federal Rules of Criminal Procedure, Rule 410 of the Federal Rules of Evidence, or any other federal rule or law that such statements or any leads therefrom should be suppressed. It is the intent of this agreement to waive all rights in the foregoing respects.

Defendant expressly agrees and understands that his provision of information and other cooperation referred to in this Section may occur when defendant's attorney is not present. However, where the factual circumstances make the request reasonable, it is understood by the parties that the United States will honor and consent to a prior written request by defendant's counsel to be present when defendant provides cooperation to the United States.

### The Obligations of the United States

15.    If defendant enters a plea of guilty as described above and fully meets all obligations under this agreement, he will not be further prosecuted by the United States Attorney's Office for the Western District of Oklahoma for any crimes related to his unauthorized transfer of approximately $10 million from Quest Resources Corporation and its affiliated companies or any crimes related to his service as Chief Executive Officer of Quest Resources Corporation and its affiliated companies, all during the period from late 2004 through August 2008. This agreement does not provide any protection against prosecution for any crime not specifically described above.

12

16.     It is understood that the sentence to be imposed upon defendant is within the sole discretion of the sentencing Court. The United States does not make any promise or representation as to what sentence defendant will receive. The United States reserves the right to inform the Probation Office and the sentencing Court of (a) the nature and extent of defendant's activities with respect to this case and all other activities of defendant which the United States deems relevant to sentencing, and (b) the nature and extent of defendant's cooperation with the United States.

17.     Further, the United States, in its sole discretion and by whatever means it deems appropriate, will evaluate defendant's cooperation in determining whether a motion for downward departure from the advisory Guideline range under § 5K1.1 of the Sentencing Guidelines, including a motion to depart below a statutory minimum sentence under 18 U.S.C. § 3553(e), or a reduction of sentence under Rule 35(b) of the Federal Rules of Criminal Procedure is appropriate. It is understood that the decision whether to make such a motion is likewise solely within the discretion of the United States, and that a negative decision will not allow a guilty plea to be withdrawn.

## Signatures

18.     By signing this agreement, defendant acknowledges that he has discussed its terms with his attorney and understands and accepts those terms. Further, defendant acknowledges that this document contains the only terms of the agreement

13

concerning his plea of guilty in this case, and that there are no other deals, bargains, agreements, or understandings which modify or alter these terms.

Dated this 31st day of July, 2009.

**APPROVED:**

_____
KERRY A. KELLY
Chief, Criminal Division

_____
JOHN C. RICHTER
United States Attorney
JEB BOATMAN
SANFORD C. COATS
Assistant U.S. Attorneys
Western District of Oklahoma
210 W. Park Avenue, Suite 400
Oklahoma City, Oklahoma  73102
(405) 553-8726 (Office)
(405) 553-8888 (Fax)

_____
JERRY DALE CASH
Defendant

_____
MATTHEW C. KANE
Attorney for Defendant

14